UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:23-CV-23556-BECERRA/REID

GREAT LAKES INSURANCE SE,

    Plaintiff,

vs.

LILLY WILLIAMS and BAYWATCH
BOAT RENTALS, TOURS &
CHARTERS, INC. d/b/a CAPTAIN JOE'S
BOAT RENTALS, TOURS & CHARTERS,
INC.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANT WILLIAMS'
MOTION TO DISMISS THE AMENDED COMPLAINT**

This matter is before the Court upon Defendant Lilly Williams' ("Williams") Motion to Dismiss the Amended Complaint (the "Motion") [ECF No. 36]. The Honorable Jacqueline Becerra referred the Motion to the undersigned. [ECF No. 58]. After careful consideration of the Motion to Dismiss, Plaintiff GREAT LAKES INSURANCE SE ("Great Lakes") Opposition [ECF No. 44], Defendant's Reply [ECF No. 46], Plaintiff's Sur-Reply [ECF No. 53], the record, and the relevant legal authorities, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss [ECF No. 36] be **DENIED**.

**BACKGROUND**

This lawsuit arises from a June 23, 2020, incident in which Williams was injured aboard a charter operated by Great Lakes' former insured and co-defendant in this action, Baywatch Boat Rentals Tours & Charters, Inc. d/b/a Captain Joe's Boat Rentals Tours and Charters, Inc. ("Captain Joe's"). Three proceedings spawned from the incident: (1) an insurance coverage dispute between

Great Lakes and Captain Joe's in the Southern District of Florida (the Insurance Coverage Action "**ICA**")[1]; (2) a personal injury lawsuit between Williams and Captain Joe's in Florida state court (the State Court Action, "**SCA**")[2]; and (3) the instant action between Great Lakes, Lilly Williams, and Captain Joe's. Here, Great Lakes is seeking: Declaratory Judgment that the policy at issue is void from its inception (Count I against all Defendants); Declaratory Judgment that Great Lakes did not commit bad faith under both New York and Florida law (Counts II and III, respectively, against all Defendants); Breach of Settlement Agreement (Count IV against Captain Joe's); and Contractual Indemnity (Count V against Captain Joe's). [*See* Amended Complaint at ECF No. 33-1].

On March 31, 2021, Great Lakes notified Captain Joe's of its concerns regarding the existence of coverage for Williams, but nonetheless stated it would defend Captain Joe's under a reservation of rights. [ECF No. 33-1 ¶ 14]. The letter also advised Captain Joe's of the ICA, filed that same day, seeking a declaration that Williams's claim was not covered under the insurance policy and that the policy was void, among other claims. [*Id.* ¶ 15]. Williams thereafter filed the SCA on April 15, 2021. [*Id.* ¶ 16].

On September 30, 2021, Great Lakes advised Williams' counsel of its coverage concerns, that it did not believe there was coverage for the claims asserted by Williams, and that it had filed a declaratory judgment action against Captain Joe's. [*Id.* ¶¶19–20]. Captain Joe's moved to dismiss the ICA, in part, on grounds that Great Lakes failed to join an indispensable party—Williams,

---

[1] *Great Lakes Ins. SE v. Baywatch Boat Rentals, Tours & Charters, Inc.*, No. 1:21-cv-21220-JLK (S.D. Fla. March 30, 2021).
[2] *Lilly Williams v. Baywatch Boat Rentals, Tours & Charters, Inc.*, No. CACE-21-007626, (Fla. Cir. Ct. Apr. 15, 2021).

which was denied by Judge King. [*Id.* ¶¶ 21–23].³ Then, in October of 2022, Great Lakes and Captain Joe's entered into a Settlement Agreement in the ICA, which included the following terms: (a) Great Lakes would pay Captain Joe's $150,000; (b) <u>Captain Joe's released Great Lakes from all liability under the policy (including for bad faith), agreed that the policy would be void from its inception, and agreed that that the policy would not respond to the Williams claim</u>; (c) Captain Joe's had not and would not assign any rights it may have against Great Lakes to any other party; and (d) Captain Joe's agreed to defend and indemnify Great Lakes from any claims by Williams arising from the circumstances underlying the SCA. [*Id.* ¶ 24 (citing Settlement Agreement, Exh. B, ECF No. 33-1 at 66) (emphasis added)].

On December 13, 2022, Great Lakes provided Williams a full copy of the Settlement Agreement as part of its response to a subpoena. [*Id.* ¶ 25 (emphasis added)].

In July of 2023, Williams and Captain Joe's settled the SCA by entering into an $800,000 Consent Judgment. [*Id.* ¶ 26]. In pertinent part, the Consent Judgment provided that "Williams will not attempt to execute or seek satisfaction of the Judgment against [Captain Joe's], its related entities, its owner . . . or any of their assets included but not limited to vessels" and that "<u>Williams may seek satisfaction of the Judgment from the proceeds of the legal action that [she] (as assignee of [Captain Joe's]) may file against . . . [Great Lakes] pursuant to the terms of the Settlement Agreement and Assignment</u>." [*Id.* ¶ 27 (citing Consent Judgment, Exh. C, ECF No. 33-1 at 74) (emphasis added)].

---

³ Judge King determined that Williams was not a "party to the insurance policy at issue in th[e] declaratory judgment action and thus [had] no legally protectable interests in it." [Exh. G, ECF No. 33-1 at 165]. He also noted that Williams had not yet secured a judgment against Captain Joe's, and thus her "only interest would be in the recovery fund available to [her] *should [she] receive a judgment in [her] favor in the underlying state court action.*" [*Id.* (emphasis added)].

3

Williams then demanded that Great Lakes satisfy the Consent Judgment and filed a Civil Remedy Notice ("CRN") accusing Great Lakes of acting in bad faith. [*Id.* ¶ 28].

## LEGAL STANDARD

A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 . . . does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court assumes the truth of "well-pleaded factual allegations" and "reasonable inference[s]" therefrom. *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Ashcroft*, 566 U.S. at 678–79). A court ruling on a motion to dismiss must accept the factual allegations as true, "even if they are subject to dispute." *Devengoechea v. Bolivarian Republic of Venezuela*, 889 F.3d 1213, 1220 (11th Cir. 2018) (internal citation and quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). "And, of course, a

4

well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

## ANALYSIS

### I. Declaratory Judgment that the Policy is Void from its Inception (Count I)

Williams argues this Declaratory Judgment action should be dismissed because the Settlement Agreement—whereby Captain Joe's released Great Lakes from all liability under the policy and agreed that the policy would be void from its inception—is not binding on her. [ECF No. 36 at 4]. This question, however, is not suitable for disposition on a motion to dismiss. "The only relevant inquiry in a motion to dismiss a declaratory judgment action is whether or not the plaintiff is entitled to a declaration of rights." *Brodsky v. USAA Gen. Indem. Co.*, No. 19-62860, 2020 WL 231189, at *2 (S.D. Fla. Jan. 15, 2020) (citation omitted); *Tobon v. Am. Sec. Ins. Co.*, 06-61912-CIV-SEITZ, 2007 WL 1796250, at *2 (S.D. Fla. June 20, 2007) ("An order on a motion to dismiss a petition for declaratory judgment should not reach the merits of the suit, but should only determine the question of whether or not the plaintiff is entitled to a declaration of rights."). Williams' question, in effect, asks the Court to reach the merits of the claim. In other words, if this Court finds that that the policy is indeed void from its inception, that decision would affect whether the Settlement Agreement is legally binding on her.

Williams' failure to address the appropriate standard on a motion to dismiss a declaratory judgment claim is fatal to its Motion. Subject-matter jurisdiction under the federal Declaratory Judgment Act depends on the existence of an "actual controversy." *Cafe La Trova LLC v. Aspen Specialty Ins. Co.*, 519 F. Supp. 3d 1167, 1174–75 (S.D. Fla. 2021) (quoting *Emory v. Peeler*, 756 F.2d 1547, 1551–52 (11th Cir. 1985) (quotation marks omitted)); *Odyssey Marine Exploration, Inc. v. Unidentified, Shipwrecked Vessel or Vessels*, 512 F. App'x 890, 895 (11th Cir. 2013)

5

(explaining the actual controversy requirement "is jurisdictional"). The actual controversy requirement, which is congruent with the "case or controversy" requirement of Article III of the Constitution, is evaluated "on a case-by-case basis." *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995) (quotation marks and citation omitted); *see MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) ("[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." (alteration added; citation omitted)).

For a justiciable controversy to exist, there must be a substantial, "definite and concrete" dispute "touching the legal relations of parties having adverse legal interests." *MedImmune, Inc.*, 549 U.S. at 127 (quotation marks and citation omitted). The controversy cannot be "conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Emory*, 756 F.2d at 1552 (citations omitted). The party invoking jurisdiction generally "must show, at an 'irreducible minimum,' that at the time the complaint was filed, he ha[d] suffered some actual or threatened injury resulting from the defendant's conduct, that the injury can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition." *Atlanta Gas Light Co.*, 68 F.3d at 414 (alteration added; citations omitted). The Court has "exceptionally broad discretion in deciding whether to issue a declaratory judgment." *Otwell v. Ala. Power Co.*, 747 F.3d 1275, 1280 (11th Cir. 2014).

Plaintiff's Amended Complaint states that "a case or controversy exists and has existed between the Parties since the beginning of this action, such that an action for declaratory judgment is ripe and appropriate" and requests that the Court "declare that the Policy was void from its inception by virtue of the settlement agreement" such that "Great Lakes has no duty to indemnify

6

Captain Joe's for the Consent Judgment nor any other duty to satisfy the Consent Judgment.. . ." [ECF No. 33-1 at 8]. The undersigned finds that Williams' Consent Judgment entered into with Captain Joe's (which provides that she may seek satisfaction of her judgment against Great Lakes) taken together with Williams' attempt to collect on the judgment and allegations of bad faith by means of a CRN (which accuses Great Lakes of depriving Williams of liability coverage through the Settlement Agreement), evidence an actual controversy as to Count I. And to the extent that Williams challenges the justiciability of this claim, her argument is undermined by her filing of a counterclaim seeking declaratory judgment premised on the same factual circumstances described in Great Lakes' Amended Complaint. [ECF No. 10].

Next, Williams relies on discovery responses to argue, in her Motion to Dismiss, that Great Lakes' collection of premiums *after* it was on notice of Williams's personal injury claim evidence that Great Lakes "forfeited whatever right it may have had to void, to rescind, or cancel its 2019 Policy as applied to the Williams claim." [ECF No. 36 at 4]. Williams also offers other factual allegations, such as Great Lakes' motivation to enter into the Settlement Agreement. [*Id.* at 5]. The Court will not address arguments that rely on factual allegations outside the four corners of the Amended Complaint. Consideration such matters is improper on a motion to dismiss. *Milburn v. United States,* 734 F.2d 762, 765 (11th Cir.1984); *See also Innovative Vehicle Sols. W., LLC v. Renntech, Inc.*, 21-14404-CV, 2022 WL 3137029, at *4 (S.D. Fla. June 16, 2022), *report and recommendation adopted*, 21-14404-CIV, 2022 WL 3009495 (S.D. Fla. July 29, 2022) ("Defendant's reference to prior state court litigation is improper at this stage because in deciding a motion to dismiss, the scope of the review must be limited to the four corners of the complaint.. . ." (internal quotation marks omitted) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).

Williams also argues that the plain language of the 2019 policy does not allow Great Lakes to enter into a Settlement Agreement that retroactively attempts to cancel its 2019 policy, citing to the policy's cancellation clause at paragraph 9(d). [ECF No. 36 at 6]. The clause requires ten-day written notice by either party before cancellation. [*Id.*]. Williams construes the clause as one that (1) protects the insurer, the insured, and third-party claimants; (2) "makes clear that cancellation is only an option as to future third party claims that have not yet occurred"; and (3) "contains no provision for either party, or both, to agree to cancel the policy retroactively in order to eliminate coverage for a pre-existing claim." [*Id.*]. Great Lakes argues that Williams was not a party or a third-party beneficiary to the policy and thus cannot challenge how the parties to the agreement chose to resolve the dispute. [ECF No. 44 at 9]. On the merits, Great Lakes argues that the clause at issue applies to *cancellation* of the policy, not *voiding* it entirely: "[c]ancellation is prospective; rescission—what actually happened—is both prospective and retrospective." [*Id.*]

Contract interpretation is typically inappropriate at the motion to dismiss stage. *See Geter v. Galardi S Enterprises, Inc.,* 43 F.Supp.3d 1322, 1328, at *5 (S.D. Fla. Aug. 29, 2014) ("[T]he Court may not engage in contract interpretation at the motion to dismiss stage, as these arguments are more appropriate for summary judgment.") (citations omitted); *Bordelon Marine, LLC v. ETRAC, Inc.*, 528 F. Supp. 3d 1280, 1286 (S.D. Fla. 2020) (finding same). The extent to which the policy—which at this point appears to have been voided by virtue of the Settlement Agreement—extends to Williams, that requires contractual interpretation that is not appropriate at the motion to dismiss stage.

### II. Declaratory Judgment that Great Lakes Did Not Commit Bad Faith Under New York Law and Florida Law (Counts II and III, respectively)

Williams next challenges Counts II and III of the Amended Complaint for Plaintiff's lack of standing. [ECF No. 36 at 8]. As a basis for Count II, Great Lakes asserts that, under New York

8

law, it did not commit bad faith, even assuming *arguendo* that the policy is not void pursuant to the Settlement Agreement. [ECF No. 33-1 ¶¶ 42–52]. Count III is asserted as an alternative to Count II, "in the event that the Court determines that the choice-of-law clause is unenforceable and that Great Lakes' obligations to Ms. Williams are governed by Florida law." [*Id.* ¶ 54].[4]

Williams argues that Great Lakes failed to plead any allegation that would provide standing to pursue its claim for declaratory relief, and states that Counts II and III are premature. [ECF No. 36 at 9–10]. She highlights several allegations in the Amended Complaint that indicate that the bad faith claims are "not imminent, and in fact, not even possible." [*Id.* at 10 (emphasis removed) (citing Amended Complaint, ECF No. 33-1 ¶¶ 44, 45, 48, 50, 56, 57, 64, 60)]. For example, Williams argues that Great Lakes itself concedes that there must be a final judgment entered against Captain Joe's for damages in excess of the policy limit before a bad faith claim is filed. [ECF No. 36 at 10 (citing Amended Complaint, ECF No. 33-1 at ¶¶ 50, 64)]. The Amended Complaint also refers to the fact that insurers cannot have engaged in bad faith for failing to settle an uncovered claim. [ECF No. 36 at 10–11 (citing Amended Complaint, ECF No. 33-1 at ¶¶ 48, 60)]. In effect, because Williams' judgment is not in excess of the policy limit,[5] it appears no bad faith claim against Great Lakes *should* lie. Indeed, Williams acknowledges as much: "[T]he bad faith claims are premature and unnecessary." [ECF No. 46 at 9].

---

[4] As background, the policy at issue contains a choice of law clause that states that "[a]ny dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York." [ECF No. 33-1 ¶ 40]. And because "there is no entrenched federal precedent on insurance bad faith, such claim is, pursuant to the Policy's choice-of-law clause, governed by New York law." [*Id.* ¶ 41].

[5] The Consent Final Judgment secured in the SCA is for $800,000.00 while the 2019 policy is for a single limit in the amount of $1,000,000.00. [ECF No. 36 n. 10].

"A civil remedy notice is a *condition precedent* to bringing a bad faith claim under section 624.155." *Vaughn v. Producers Agric. Ins. Co.*, 111 F. Supp. 3d 1251, 1254 (N.D. Fla. 2015) (emphasis added). The statute requires putative claimants to file a notice to "give the insurer a final opportunity to settle an insured's claim and avoid unnecessary bad-faith litigation." *Id.* at 1255 (quoting *Rousso v. Liberty Surplus Ins. Corp.,* No. 10–CV–20554, 2010 WL 7367059, at *3 (S.D. Fla. Aug. 13, 2010)). "There are three *prerequisites* to filing a statutory bad-faith claim: (1) determination of the insurer's liability for coverage; (2) determination of the extent of the insured's damages; and (3) the required notice must be filed under section 624.155(3)(a). *Landers v. State Farm Florida Ins. Co.*, 234 So. 3d 856, 859 (Fla. 5th DCA 2018) (citing *Cammarata v. State Farm Fla. Ins. Co.*, 152 So.3d 606, 612 (Fla. 4th DCA 2014) (emphasis added)).

As detailed in the preceding section, for a justiciable controversy to exist, there must be a substantial, "definite and concrete" dispute "touching the legal relations of parties having adverse legal interests." *MedImmune, Inc.*, 549 U.S. at 127 (quotation marks and citation omitted). Williams already made a demand to pay the Consent Judgment on July 18, 2023, and then filed a CRN with the State of Florida. [ECF No. 33-1 ¶ 28].

It is unclear how Williams can assert that there is no justiciable controversy regarding good faith while simultaneously initiating a CRN, which is the prerequisite to filing a bad faith claim. And as in Count I, Williams' counterclaim seeks declaratory judgment premised on the same facts described in Great Lakes' Amended Complaint. [ECF No. 10]. For these reasons, her arguments as to Counts II and III fail.

In sum, Counts I–III seeking Declaratory Judgment relief should proceed as to Defendant Williams.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Defendant's Motion to Dismiss [ECF No. 36] be **DENIED**.

Objections to this Report may be filed with the District Judge within **FOURTEEN (14) days** of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 7th day of October 2024.

                                              LISETTE M. REID
                                              UNITED STATES MAGISTRATE JUDGE

cc:    **U.S. District Judge Jacqueline Becerra; and**

        **All Counsel of Record**