UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:23-CV-23556-BECERRA/REID

GREAT LAKES INSURANCE SE,

    Plaintiff,

vs.

LILLY WILLIAMS and BAYWATCH
BOAT RENTALS, TOURS &
CHARTERS, INC. d/b/a CAPTAIN JOE'S
BOAT RENTALS, TOURS & CHARTERS,
INC.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANT BAYWATCH BOAT RENTALS, TOURS & CHARTERS, INC. D/B/A CAPTAIN JOE'S BOAT RENTALS, TOURS & CHARTERS' MOTION TO DISMISS THE AMENDED COMPLAINT**

This matter is before the Court upon Defendant Baywatch Boat Rentals, Tours & Charters, Inc. d/b/a Captain Joe's Boat Rentals, Tours & Charters, Inc.'s ("Captain Joe's") Motion to Dismiss the Amended Complaint (the "Motion"). [ECF No. 37]. The Honorable Jacqueline Becerra referred the Motion to the undersigned. [ECF No. 58]. After careful consideration of the Motion to Dismiss, Plaintiff GREAT LAKES INSURANCE SE's ("Great Lakes") Opposition [ECF No. 43], Defendant's Reply [ECF No. 47], the record, and the relevant legal authorities, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss [ECF No. 37] be **GRANTED** as to Counts II and III **and DENIED** as to Counts IV and V.[1]

**BACKGROUND**

---

[1] Defendant Lilly Williams filed a separate Motion to Dismiss. [ECF No. 36]. The undersigned's recommendation that the motion be denied was adopted by Judge Becerra. [ECF Nos. 77, 85].

This lawsuit arises from a June 23, 2020, incident in which Defendant Lilly Williams was injured aboard a charter operated by Great Lakes' former insured and co-defendant in this action, Captain Joe's. Three proceedings spawned from the incident: (1) an insurance coverage dispute between Great Lakes and Captain Joe's in the Southern District of Florida (the Insurance Coverage Action "**ICA**")[2]; (2) a personal injury lawsuit between Williams and Captain Joe's in Florida state court (the State Court Action, "**SCA**")[3]; and (3) the instant action between Great Lakes, Lilly Williams, and Captain Joe's. Here, Great Lakes is seeking: Declaratory Judgment that the policy at issue is void from its inception (Count I against all Defendants); Declaratory Judgment that Great Lakes did not commit bad faith under both New York and Florida law (Counts II and III, respectively, against all Defendants); Breach of Settlement Agreement (Count IV against Captain Joe's); and Contractual Indemnity (Count V against Captain Joe's). [*See* Amended Complaint at ECF No. 33-1].

As background, on March 31, 2021, Great Lakes notified Captain Joe's of its concerns regarding the existence of coverage for Williams, but nonetheless stated it would defend Captain Joe's under a reservation of rights. [*Id.* at ¶ 14]. Great Lakes also advised Captain Joe's of the ICA, filed that same day, seeking a declaration that Williams' claim was not covered under the insurance policy and that the policy was void, among other claims. [*Id.* ¶ 15]. Williams thereafter filed the SCA on April 15, 2021. [*Id.* ¶ 16].

On September 30, 2021, Great Lakes advised Williams' counsel of its coverage concerns—that it did not believe there was coverage for the claims asserted by Williams, and that it had filed

---

[2] *Great Lakes Ins. SE v. Baywatch Boat Rentals, Tours & Charters, Inc.*, No. 1:21-cv-21220-JLK (S.D. Fla. March 30, 2021).
[3] *Lilly Williams v. Baywatch Boat Rentals, Tours & Charters, Inc.*, No. CACE-21-007626, (Fla. Cir. Ct. Apr. 15, 2021).

2

a declaratory judgment action against Captain Joe's. [*Id.* ¶¶19–20]. Captain Joe's moved to dismiss the ICA, in part, on grounds that Great Lakes failed to join an indispensable party—Williams, which was denied by Judge James Lawrence King. [*Id.* ¶¶ 21–23].[4] Then, in October of 2022, Great Lakes and Captain Joe's entered into a Settlement Agreement in the ICA, which included the following terms: (a) Great Lakes would pay Captain Joe's $150,000; (b) <u>Captain Joe's released Great Lakes from all liability under the policy, including liability for bad faith, agreed that the policy would be void from its inception, and agreed that the policy would "not respond" to the Williams claim</u>; (c) Captain Joe's had not and would not assign any rights it may have against Great Lakes to any other party; and (d) Captain Joe's agreed to defend and indemnify Great Lakes from any claims by Williams arising from the circumstances underlying the SCA. [*Id.* ¶ 24 (citing Settlement Agreement, Exh. B, ECF No. 33-1 at 66–68) (emphasis added)].

On December 13, 2022, Great Lakes provided Williams a full copy of the Settlement Agreement as part of its response to a subpoena. [*Id.* ¶ 25].

In July of 2023, Williams and Captain Joe's settled the SCA by entering into an $800,000 Consent Judgment. [*Id.* ¶ 26]. In pertinent part, the Consent Judgment provided that "Williams will not attempt to execute or seek satisfaction of the Judgment against [Captain Joe's], its related entities, its owner . . . or any of their assets included but not limited to vessels" and that "<u>Williams may seek satisfaction of the Judgment from the proceeds of the legal action that [she] (as assignee of [Captain Joe's]) may file against . . . [Great Lakes] pursuant to the terms of the Settlement</u>

---

[4] Judge King determined that Williams was not a "party to the insurance policy at issue in th[e] declaratory judgment action and thus [had] no legally protectable interests in it." [Exh. G, ECF No. 33-1 at 165]. He also noted that Williams had not yet secured a judgment against Captain Joe's, and thus her "only interest would be in the recovery fund available to [her] *should [she] receive a judgment in [her] favor in the underlying state court action.*" [*Id.* (emphasis added)].

3

Agreement and Assignment." [*Id.* ¶ 27 (citing Consent Judgment, Exh. C, ECF No. 33-1 at 74) (emphasis added)].

Williams then demanded that Great Lakes satisfy the Consent Judgment and filed a Civil Remedy Notice ("CRN") accusing Great Lakes of acting in bad faith. [*Id.* ¶ 28].

## **LEGAL STANDARD**

A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 . . . does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court assumes the truth of "well-pleaded factual allegations" and "reasonable inference[s]" therefrom. *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Ashcroft*, 566 U.S. at 678–79). A court ruling on a motion to dismiss must accept the factual allegations as true, "even if they are subject to dispute." *Devengoechea v. Bolivarian Republic of Venezuela*, 889 F.3d 1213, 1220 (11th Cir. 2018) (internal citation and quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard 'simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' of the required

4

element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

## **ANALYSIS**

As a basis for Count II, Great Lakes asserts that, under New York law, it did not commit bad faith in the handling of Williams' claim against Captain Joe's, even assuming *arguendo* that the policy is not void pursuant to the Settlement Agreement.[5] [ECF No. 33-1 ¶¶ 42–52]. Count III is asserted as an alternative to Count II, "in the event that the Court determines that the choice-of-law clause is unenforceable and that Great Lakes' obligations to Ms. Williams are governed by Florida law." [*Id.* ¶ 54]. Captain Joe's challenges Counts II and III of the Amended Complaint for Plaintiff's lack of standing. [ECF No. 37 at 3].

On Count IV, Great Lakes claims that Captain Joe's alleged assignment of rights to Williams constitutes a breach of the Settlement Agreement. [ECF No. 33-1 ¶ 66]. As a basis for Count V, Great Lakes again relies on the Settlement Agreement to allege contractual indemnity. [*Id.* ¶ 73]. Captain Joe's seeks dismissal of Counts IV and V for failure to state a claim, arguing that "no claims have been filed . . . against Great Lakes based on any purported assignment" and "Great Lakes has failed to allege any demand for indemnification was made prior to filing suit." [ECF No. 37 at 2].

---

[5] As background, the policy at issue contains a choice of law clause that states that "[a]ny dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York." [ECF No. 33-1 ¶ 40]. And because "there is no entrenched federal precedent on insurance bad faith, such claim is, pursuant to the Policy's choice-of-law clause, governed by New York law." [*Id.* ¶ 41].

5

**I.      Count II and III**

Subject-matter jurisdiction under the federal Declaratory Judgment Act depends on the existence of an "actual controversy." *Cafe La Trova LLC v. Aspen Specialty Ins. Co.*, 519 F. Supp. 3d 1167, 1174–75 (S.D. Fla. 2021) (quoting *Emory v. Peeler*, 756 F.2d 1547, 1551–52 (11th Cir. 1985) (quotation marks omitted)); *Odyssey Marine Exploration, Inc. v. Unidentified, Shipwrecked Vessel or Vessels*, 512 F. App'x 890, 895 (11th Cir. 2013) (explaining the actual controversy requirement "is jurisdictional"). The actual controversy requirement, which is congruent with the "case or controversy" requirement of Article III of the Constitution, is evaluated "on a case-by-case basis." *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995) (quotation marks and citation omitted); *see MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) ("[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." (alteration added; citation omitted)).

For a justiciable controversy to exist, there must be a substantial, "definite and concrete" dispute "touching the legal relations of parties having adverse legal interests." *MedImmune, Inc.*, 549 U.S. at 127 (quotation marks and citation omitted). The controversy cannot be "conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Emory*, 756 F.2d at 1552 (citations omitted). The party invoking jurisdiction generally "must show, at an 'irreducible minimum,' that at the time the complaint was filed, he ha[d] suffered some actual or threatened injury resulting from the defendant's conduct, that the injury can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition." *Atlanta Gas Light Co.*, 68 F.3d at 414 (alteration added; citations omitted). The Court has "exceptionally broad discretion in deciding

6

whether to issue a declaratory judgment." *Otwell v. Ala. Power Co.*, 747 F.3d 1275, 1280 (11th Cir. 2014).

    A.  <u>Plaintiff Fails to Assert a Justiciable Controversy as to its Declaratory Judgment Claims That It Did Not Commit Bad Faith Under New York (Count II) and Florida (Count III) Law</u>

Captain Joe's argues that no bad faith claim has been initiated by Captain Joe's, nor is there any indicated that Captain Joe's plans on filing such a claim. [ECF No. 37 at 3]. Great Lakes does not allege that a CRN—the pre-requisite to filing a bad faith claim under Florida law—has been filed by Captain Joe's. In response to the Motion, Great Lakes simply rehashes the argument it made in opposition to Williams' Motion to Dismiss: that *Williams* has taken steps to file a bad faith claim by initiating a CRN. [ECF No. 43 at 3].

While it is clear the bad faith claims are likely imminent as to Williams, such does not appear to be the case as to Captain Joe's. Indeed, as to both Counts II and III, Captain Joe's does nothing to highlight the likelihood of *any* "real and immediate" non-"conjectural, hypothetical, or contingent" claim of bad faith. *MedImmune, Inc.*, 549 U.S. at 127; *Emory*, 756 F.2d at 1552. The Amended Complaint is devoid of any such allegations. In fact, how can such a claim be imminent if, by virtue of the Settlement Agreement entered pursuant to the ICA, Captain Joe's *already* released Great Lakes from all liability under the policy (including for bad faith). *See* Amended Complaint, ECF No. 33-1 ¶ 24 (citing Settlement Agreement, Exh. B, ECF No. 33-1 at 67–68). Therefore, dismissal as to Counts II and III is warranted.

Further, Captain Joe's argues that "a claim for bad faith . . . is not ripe until there is a judgment against the insured for an amount that exceeds the insurance policy limits." [ECF No. 37 at 5–6, 11]. It also believes that the Amended Complaint fails for lack of ripeness because the underlying coverage claim has not yet been prevailed upon. [*Id.* at 8]. While these arguments may

7

have merit under both New York and Florida law, Captain Joe's has not made a bad faith claim, and no likelihood of such a claim being filed has been shown. As such, Claims II and III should be dismissed. No actual controversy exists.

## II. Counts IV and V

Under Florida law, to establish a breach of contract claim, a plaintiff must prove that "(1) a valid contract existed; (2) a material breach of the contract; and (3) damages." *Rosado v. Barry Univ. Inc.*, 499 F. Supp. 3d 1152, 1157 (S.D. Fla. 2020) (quoting *Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 953 (Fla. 3d DCA 2017)). The elements are similar under New York law. *See LMEG Wireless, LLC v. Farro*, 140 N.Y.S.3d 593, 596 (N.Y. App. Div. 2021) ("The essential elements of a breach of contract cause of action are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting from the breach.").

### A. Plaintiff Has Properly Asserted a Claim for Breach of Contract (Count IV)

Captain Joe's argues that, because Great Lakes fails to allege that a claim has been made against it based on a purported assignment (the basis for its breach of contract claim) and fails to allege any facts to establish how it has incurred damages, it falls short of the Fed. R. Civ. P. 12(b)(6) pleading requirement. [ECF No. 37 at 14].

The Settlement Agreement between Great Lakes and Captain Joe's, in relevant part, states that:

> Captain Joes specifically warrants, agrees and consents that it has not, and will not now or in the future assign any portion of any right or obligation they had, now have or will in the future obtain in the 2019 Policy and/or 2020 Policy to any other entity or person. This warranty includes assignment to the named operators, additional insureds, insurance agents and loss payees under the 2019 Policy and/or 2020 Policy. Each Party warrants, represents, acknowledges, agrees, and consents that the Parties are relying on this Non-Assignability in completing this Agreement; accordingly, each Party and his/her heirs, successors, and assigns shall indemnify

8

> and hold harmless from any loss or expense releasees might suffer, including but not limited to, court costs and legal fees, arising from any breach of the above representations and warranties.

Settlement Agreement, Exh. B, ECF No. 33-1 at 68.

Great Lakes alleges that, Captain Joe's assignment of rights to Williams by virtue of the Consent Judgment constitutes a breach of the Settlement Agreement. [ECF No. 33-1 ¶ 67; *See* Consent Judgment, Exh. C, ECF No. 33-1 at 75]. As a result, it alleges damages in excess of $75,000. [*Id.*]. Indeed, Williams demanded that Great Lakes satisfy the Consent Judgment and filed a CRN. [*Id.* ¶¶ 28, 68]. Captain Joe's, however, argues that Williams' claim is brought in an individual capacity and not based on any alleged assignment by Captain Joe's. [ECF No. 47 at 7].

Accepting the allegations in the Amended Complaint as true and construing them in the light most favorable to Great Lakes, the undersigned finds that Great Lakes has alleged plausible relief for its breach of contract claim. The purported damaged—Williams' demand against Great Lakes and the fees associated with defending the claim—are sufficient. To satisfy the federal rules, "a plaintiff need not specify his damages in detail, so long as his prayer for relief fairly encompasses the damages sought." *Newton v. Palm Coast Recovery Corp.,* No. 13–62051–CIV–COHN, 2014 WL 293484, at *3 (S.D. Fla. Jan. 27, 2014) (citing *Levine v. World Fin. Network Nat'l Bank,* 437 F.3d 1118, 1123–24 (11th Cir.2006)). Finally, no support is provided for Captain Joe's contention that a claim must be filed against Great Lakes before Great Lakes can make a breach of contract claim.

Accordingly, the Motion to Dismiss the breach of contract claim (Count IV) should be denied.

    B.  <u>Plaintiff Has Properly Asserted a Claim for Indemnification (Count V)</u>

Captain Joe's argues that Count V fails to establish an actual controversy. [ECF No. 37 at 15]. It also argues that the Amended Complaint fails to allege that any demand for indemnification was made pursuant to the contract. [*Id.*].

The Settlement Agreement between Great Lakes and Captain Joe's, in relevant part, provides that:

> Captain Joes, agrees to defend, indemnify and hold Great Lakes harmless from any judgment, settlement, medical bills, third-party liens, claims and/or subrogated interests which do or might exist as a result of the Williams Claim and/or Kent Claim incurred in the Williams Incident, Kent Incident and/or Underlying Williams Suit or Declaratory Lawsuit and Amended Declaratory Lawsuit. This agreement includes, but is not limited to, any claims by or on behalf of Medicare and/or Medicaid, any federal or local government entities, firms, corporations, or entities seeking reimbursement, compensation, subrogation, or payments for benefits paid or to be paid on behalf of Lilly Williams and/or John Kent Jr., for injuries and damages allegedly sustained as a result of all facts, circumstances and allegations arising from the Williams Incident, Kent Incident, Underlying Williams Suit, Williams Claim, Kent Claim, 2019 Policy, 2020 Policy, Declaratory Lawsuit and Amended Declaratory Lawsuit, together or separately.

Settlement Agreement, Exh. B, ECF No. 33-1 at 69.

The Amended Complaint further alleges that "Williams is seeking to hold Great Lakes responsible for the Consent Judgment, which exists as a result of the Williams Claim." [ECF No. 33-1 at 13–14]. Therefore, "Captain Joe's must defend, indemnify, and hold Great Lakes harmless for damages, costs, expenses, and attorneys' fees arising out of this lawsuit." [*Id.*].

Great Lakes has stated a claim for contractual indemnity. "The ultimate question for the Court to resolve in deciding a motion to dismiss is not whether a plaintiff 'will ultimately prevail on his . . . claim, . . . but whether his complaint [is] sufficient to cross the federal court's threshold.'" *Compania Chilena De Navegacion Interoceanica, S.A. v. D.H.C. Trucking, Inc.*, No. 15-22494-CIV-GAYLES, 2016 WL 1722425, at *9 (S.D. Fla. Apr. 29, 2016) (quoting *Skinner v. Switzer,* 562 U.S. 521, 530 (2011)). At the pleading stage, a plaintiff is required only to "give the

10

defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). Pursuant to the Settlement Agreement, Captain Joe's is required to indemnify and hold Great Lakes harmless from any judgment or settlement that might exist as a result of Williams' claim. And as stated in the Amended Complaint, Williams is seeking to hold Great Lakes responsible for the Consent Judgment. [ECF No. 33-1 ¶ 74]. As in the Breach of Contract claim, no support is provided for the requirement that a demand be made before filing suit. In any case, Great Lakes (in its response to the Motion) provided proof of delivery of Williams' claim to Captain Joe's. [*See* ECF No. 43-1].

Therefore, the Motion to Dismiss the contractual indemnity claim (Count V) should be denied.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Defendant's Motion to Dismiss [ECF No. 37] be **GRANTED** as to Counts II and III **and DENIED** as to Counts IV and V.

Objections to this Report may be filed with the District Judge within **FOURTEEN (14) days** of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 15th day of October 2024.

_____
LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc: **U.S. District Judge Jacqueline Becerra; and**

**All Counsel of Record**