## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.: 23-cv-23556-JB/Reid

GREAT LAKES INSURANCE SE,
A Delaware limited liability company,

       Plaintiff,

v.

LILY WILLIAMS and BAYWATCH
BOAT RENTALS, TOURS &
CHARTERS, INC. d/b/a CAPTAIN JOE'S
BOAT RENTALS, TOURS & CHARTERS,
INC.,

       Defendants.
_____/

## ORDER ON MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

      **THIS CAUSE** was referred to the Honorable Lisette M. Reid, United States

Magistrate Judge, for a Report and Recommendation on three cross-motions for

summary judgment as follows:

1. Plaintiff Great Lakes Insurance SE ("Great Lakes") Motion for Summary
   Judgment  and Statement of Facts in Support, ECF Nos. [94] and [93];
   Defendant Lilly Williams ("Williams") Opposition and Statement of Facts in
   Opposition, ECF Nos. [113] and [106]; Defendant Baywatch Boat Rentals,
   Tours & Charters, Inc. d/b/a Captain Joe's Boat Rentals, Tours & Charters,
   Inc.'s ("Captain Joe's") Opposition and Statement of Facts in Opposition, ECF
   Nos. [116] and [115]; and Great Lakes' Reply in Support of its Motion for
   Summary Judgment and Replies to Williams' and Captain Joe's Additional
   Statement of Facts, ECF Nos. [129], [127], and [128];

2. Williams' Motion for Summary Judgment and Statement of Facts in Support,
   ECF Nos. [95] and [90]; Great Lakes' Opposition and Statement of Facts in
   Opposition, ECF Nos. [110] and [109]; and Williams' Reply in Support of her
   Motion for Summary Judgment and Reply Statement of Facts, ECF Nos. [130]
   and [131]; and

3. Captain Joe's Motion for Summary Judgment and Statement of Facts in Support, ECF Nos. [97] and [96]; Great Lakes' Opposition and Statement of Facts in Opposition, ECF Nos. [111] and [108]; and Captain Joe's Reply in Support of its Motion for Summary Judgment and Reply Statement of Facts, ECF Nos. [133] and [132].

See ECF No. [58].

## I.   BACKGROUND

This matter arises from an incident aboard a charter vessel operated by Captain Joe's. ECF No. [95] at 3–4. On June 23, 2020, Williams was among several invited guests who boarded one of three chartered vessels, each embarking on a four-hour cruise to a local sandbar and returning to docks located behind a hotel in North Bay Village, Florida. *Id*. at 4. Prior to returning to the docks, Williams was unable to locate her sandals and returned to the charter vessels to look for them. *Id*. at 5. Having no luck on one of the vessels, she walked to one of the other vessels which was in the process of being cleaned. *Id*. Williams ascended a ladder from the cockpit of the vessel up to the flybridge to continue her search. *Id*. While descending the same ladder, Williams slipped and fell, sustaining serious injuries, among which were fractures of her right tibia and fibula. *Id*. at 6. Williams notified Captain Joe's of her injuries in July and August of 2020. *Id*.

The incident has since prompted multiple legal actions. In addition to Williams' suit against Captain Joe's in state court (the "State Court Action"), Great Lakes, who insured Captain Joe's at the time of Williams injury, also filed a declaratory action seeking a finding that the insurance policy between Great Lakes and Captain Joe's (the "Policy") was void (the "Declaratory Action"). *See Great Lakes*

*Insurance SE v. Baywatch Boat Rentals, Tours & Charters, Inc.*, No.1:21-cv-21220-JLK (S.D. Fla. October 13, 2022).

During the pendency of the Declaratory Action, Captain Joe's filed a motion to dismiss for failing to join Williams as an indispensable party. *See Great Lakes Ins., SE v. Baywatch Boat Rentals, Tours & Charters, Inc.,* No. 1:21-CV-21220-JLK, 2022 WL 22835905, at *2 (S.D. Fla. Jan. 18, 2022). The Honorable Senior United States District Judge King held that Williams was not an indispensable party, and did not need to be included in the Declaratory Action because Williams' interest was "not legally protectable because they derive 'from a purely speculative outcome in the state action still pending, not the insurance policy at issue here.' [ ] Williams . . . [is not a] party to the insurance policy at issue in this declaratory judgment action and thus [has] no legally protectable interest in it." *Id.* (citing to *Mid-Continent Cas. Co. v. Basdeo*, No. 08-cv-61473, 2009 WL 2450386, at *3 (S.D. Fla. Aug. 7, 2009).

Ultimately, the Declaratory Action resulted in a settlement agreement between Great Lakes and Captain Joe's, (the "Settlement" or "Great Lakes Settlement") in October of 2022. Among the terms of the Great Lakes Settlement were that: (1) Great Lakes would return $150,000 worth of premium payments to Captain Joe's; (2) Captain Joe's would release Great Lakes from all liability under the Policy; (3) the Policy would be void from its inception; (4) the Policy would not cover Williams' claim; (5) Captain Joe's would not assign any rights it may have against Great Lakes to Williams; and (6) Captain Joe's would indemnify Great lakes

from any claims by Williams arising from the incident with Captain Joe's. *See* ECF No. [93–7].

In the State Court Action, Williams and Captain Joe's ultimately settled their claims in the State Court Action by way of a consent judgment and a settlement and assignment agreement, (the "Consent Judgment"). *See* ECF No. [95] at 6; *see generally Lilly Williams v. Baywatch Boat Rentals, Tours & Charters, Inc.*, No. CACE-21-007626, (Fla. Cir. Ct. Apr. 15, 2021). The Consent Judgment stated that Williams could seek satisfaction of the agreed upon $800,000 judgment against "any other responsible agent or party, including but not limited to Great Lakes Insurance SE pursuant to the terms of the Settlement Agreement and Assignment," and assigned to Williams "all claims, rights, or benefits that Baywatch may have against Atlass and/or under the policy with Great Lakes . . . ." ECF No. [96–5] at 2.

On July 20, 2023, Williams then turned to Great Lakes to satisfy the Consent Judgment by filing a Civil Remedy Notice, alleging that Great Lakes was acting in bad faith. *See* ECF No. [1–10].

The third action, the instant suit filed by Great Lakes on September 15, 2023, is a declaratory action which asks the Court to recognize, amongst other things, the Settlement it reached with its insured, Captain Joe's, from its original Declaratory Action. *See generally* ECF No. [94] at 1–2. Specifically, the Complaint seeks: (1) a declaratory judgment that the Policy was void from its inception ("Count I"); (2) a declaratory judgment that Great Lakes did not commit bad faith under New York Law ("Count II"); (3) in the alternative to Count II, a declaratory judgment that Great

4

Lakes did not commit bad faith under Florida law ("Count III"); (4) a breach of the Great Lakes Settlement Agreement against Captain Joe's ("Count IV"), and (5) a Contractual Indemnity against Captain Joe's ("Count V"). *See* ECF No. [33–1]. Williams filed a counterclaim for declaratory judgment that the Policy provides indemnity coverage to Williams for her Consent Judgment. *See* ECF No. [10] at 12. The parties each filed Motions for Summary Judgment and supporting statements of material facts, which were referred to Magistrate Judge Reid for a Report and Recommendation. *See* ECF Nos. [93], [94], [90], [95], [96], [97]; *see also* ECF No. [58].

## II.   THE REPORT AND RECOMMENDATION

Magistrate Judge Reid filed a Report and Recommendation ("R&R"), recommending that Great Lakes' and Williams' Motions for Summary Judgment be granted in part and denied in part, and that Captain Joe's Motion for Summary Judgement be denied.  ECF No. [135].  More specifically, regarding Great Lakes' Count I claim for a declaratory judgment that the Policy was void from its inception, and Williams' counterclaim for coverage under the Policy, the R&R concluded that the policy was not void from inception, that Williams has standing to challenge the Policy, and found a genuine issue of material fact as to whether the Policy could be void for other reasons. *See id.* at 23–27.

As to Counts II and III, the R&R found Williams' bad faith claims under Florida and New York law were without merit, and granted Great Lakes' motion for summary judgment, and denied Williams' motion for summary judgment. *Id.* at 29.

5

As to Great Lakes' Count IV for breach of contract, the R&R granted Great Lakes' motion for summary judgment and denied Captain Joe's motion for summary judgment, finding that Captain Joe's did indeed breach its contract with Great Lakes by purporting to assign any rights to Williams. *See id.* at 31.

Lastly, the R&R found that the indemnity clause contained in the Great Lakes Settlement Agreement did indeed apply to any claims Williams would assert against Great Lakes as a result of her injuries, and recommended that summary judgment be granted in favor of Great Lakes on Count V. *Id.* at 33–34.

## III.   THE OBJECTIONS

Great Lakes, Williams, and Captain Joe's each filed objections to the R&R (the "Objections"), ECF Nos. [146], [138], and [145], to which each party responded, ECF Nos. [151], [152], [154], [155].

In its Objections, Great Lakes argues that the Policy was void from its inception based on the Great Lakes Settlement Agreement because Williams was not a party to the Policy nor a third-party beneficiary at such time, and because this Court previously confirmed the same. *See* ECF No. [146] at 4–5; *see also Great Lakes I,* No. 1:21-CV-21220-JLK, 2022 WL 22835905, at *2. To find otherwise, says Great Lakes, is to "vitiate the freedom of contract, create chaos, and leave insurers and insureds to question whether such an agreement could ever be made." *See id.* at 5. Great Lakes argues that the R&R eludes this point by not reaching a conclusion as to whether the Policy was voided by the Great Lakes Settlement Agreement and

avoiding a ruling on whether it was void for other reasons. *Id*. at 6 (*quoting* R&R at 30–31).

Great Lakes also asserts that the Great Lakes Settlement Agreement negated the duty of Great Lakes to indemnify Captain Joe's with respect to any damages for Williams' injuries. In that case, argues Great Lakes, whether the Policy is void or not may not matter, because Captain Joe's already agreed to release Great Lakes of such duties to indemnify for any claims related to Williams' injuries. *Id*. at 13.

Williams' Objections agreed with the R&R as to Williams' ability to challenge the Great Lakes Settlement Agreement, but contested that the Policy could be void for any other reason.[1] ECF No. [138] at 4–5. Williams also argued that the R&R should not have considered certain arguments presented by Great Lakes in response to Williams' counterclaims, disagreeing with the R&R's conclusion that such arguments were included in Great Lakes' Amended Complaint and in Great Lakes' Affirmative Defenses. *Id*. at 6 (*quoting* R&R at 5, n.10).

Lastly, Captain Joe's Objections take issue with the R&R's findings that Captain Joe's (1) breached the Great Lakes Settlement Agreement by assigning its rights to Williams in the Captain Joe's Settlement Agreement; and (2) must indemnify Great Lakes should Williams be able to collect on the Policy. *See* ECF No. [145]. More specifically, Captain Joe's argues that there is no causal connection between the alleged breach of contract and the damages that resulted because neither

---

[1] Williams also had objections to certain findings of fact in the R&R that the Court does not find relevant for purposes of its ruling.

Williams nor Captain Joe's believed there was an assignment as part of the Captain Joe's Settlement Agreement.  *Id.* at 4–10.  Captain Joe's also argued that the indemnification clause in the Great Lakes Settlement Agreement did not apply to future claims by Williams, such as her present counterclaim.  *Id.* at 12.

The Court held oral argument on the objections to the R&R on July 24, 2025. *See* ECF Nos. [169], [171].  Prior to Oral Argument, Williams filed a Notice of Supplemental Authority in which she provided case law for the proposition that it is against public policy for an insurer and its insured to enter into a settlement agreement which voids an insurance policy from its inception while there is notice of an existing third-party claim against the insured.  ECF No. [161].  Great Lakes and Captain Joe's each filed a Response.  *See* ECF Nos. [166] and [167].  On September 18, 2025, the Court requested additional briefing on this issue.  ECF No. [175]; *see* ECF Nos. [181], [182], [183], [184], [185], [186].

IV.   **ANALYSIS**

In evaluating the R&R, this Court has a duty to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b).  It also may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  *Id.*

The threshold question before the Court is whether an insurer and its insured can enter into a settlement agreement that voids a policy from its inception if there

is notice of an existing claim against the insured at the time the settlement agreement was entered.  There appears to be no precedent that clearly answers that question.

The R&R distilled that claim, articulated in Count I of the Amended Complaint and Williams' counterclaim, into two questions: (1) whether Williams has standing to challenge her rights under the Policy (despite the Settlement that voided the policy), and if so, (2) whether the Policy is nevertheless void for reasons other than the Settlement.[2]  ECF No. [135] at 17–18.  As to the first question, the R&R concluded that although Williams was not an indispensable party and had no standing to challenge the Declaratory Action (which eventually resolved by way of the Settlement), she now has a judgement in her favor as to the underlying liability, and therefore, has standing to assert her rights against the Policy.  *Id.* at 20.

The issue for the undersigned, however, is not whether she now has standing to challenge her rights under the Policy.  Indeed, although she did not have standing at the time the issue was addressed in the Declaratory Action before Judge King, there appears little question that she does have standing now given that she has secured a judgment in the underlying tort action.  Instead, the issue is whether there is any Policy for her to challenge, given that the Settlement between the insurer, Great Lakes, and insured, Captain Joe's, resulted in the Policy being void *from inception*.  As such, in order for Williams to have any cause of action against Great Lakes at this juncture, the Settlement between Great Lakes and Captain Joe's would have to be set aside.

---

[2] For the reasons stated herein, we need not reach the second question.

On this point, Great Lakes and Captain Joe's both argue that there is no applicable exception to the inviolable right of parties to enter (and exit) contracts freely. *See* ECF Nos. [181] at 4; ECF No. [183] at 11. Great Lakes and Captain Joe's both rely on New York's "deeply rooted" public policy favoring the freedom of contract, and distinguish the exceptions that Williams raises from the facts at hand. *See* ECF Nos. [146] at 5–6; [155] at 3–4; [181] at 3; [183] at 2–3 (citing to *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 387 (1919) ("Those who make a contract may unmake it")). Similarly, Captain Joe's argues that there is no statutory provision or compulsory insurance framework that would nullify their contractual autonomy, and that the answer to the issue at hand is answered with New York's freedom-of-contract principles. ECF No. [183] at 9, 16. *See Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 691, 660 N.E.2d 415 (1995) ("(t)he policy favoring freedom of contract requires that, within broad limits, the agreement of the parties should be honored even though forfeiture results"); *159 MP Corp. v. Redbridge Bedford, LLC*, 33 N.Y.3d. 353, 358 (2019) (upholding a contract that resulted in the waiver of a right to bring a declaratory judgment "in light of the strong public policy favoring freedom of contract").

In advancing the argument that the Settlement should be set aside, Williams relies heavily on a district court decision from Vermont, *West v. Carolina Casualty Inc. Co.*, 325 F. Supp. 3d 501 (D. Vt. 2018). Williams argues that *West* addresses the "unique insurance contract/public policy issues raised by the instant case." ECF No. [161] at 1. In *West*, the plaintiff sued her employer, insured by Carolina Casualty

Insurance Company, for age discrimination.  *West*, 325 F.Supp.3d at 502.  After a disagreement regarding the parties' preferred legal representation, the employer executed a release discharging Carolina from any obligation to defend or indemnify the employer in connection with the plaintiff's pending lawsuit.  *Id*.  Ultimately, the plaintiff obtained a default judgment against the employer, and a jury determination on damages resulted in a $400,000 judgment against the employer.  *Id*.  The plaintiff then filed an action in federal district court against the insurer seeking payment of the judgment under Vermont's direct action statute.  *Id*.

The court in *West* relied on precedent from a handful of cases to conclude that there was a public policy interest against the cancellation of coverage in cases where litigation has commenced following a third party's injury.  *See id*. at 505 (citing to *Home Ins. Co. v. Baltimore Warehouse Co.*, 93 U.S. 527 (1876); *Ins. Co. of North America v. United States*, 159 F.2d 699 (4th Cir. 1947); *Spann v. Commercial Standard Ins. Co. of Dallas, Tex.*, 82 F.2d 593 (8th Cir. 1936); *Capuano v. Kemper Ins. Co.*, 433 A.2d 949 (R.I. 1981); *In re Matthews*, 207 B.R. 631 (Bankr. D. Minn. 1997); Couch on Insurance § 31.49; Appleman on Insurance Law & Practice Archive § 5020).  It reasoned that because the insurer and the insured have little interest in cancelling coverage, the third party's interest in seeking damages under the policy was superior.  *West*, 325 F.Supp.3d at 506.  Although the public policy arguments in *West* are certainly compelling, the Court sees no precedent for extending that reasoning here.

In her supplemental briefing, Williams addresses this concern by arguing that the Settlement should be set aside because it is New York[3] public policy to ensure compensation to third parties who put insurers on notice of their claims. *See* ECF No. [182] at 1. Williams relies on *Sales v. U.S. Underwriters Ins. Co.,* where, similar to the instant case, the insurer settled a declaratory action against the insured and agreed, pursuant to that settlement agreement, that the insured would be absolved of any coverage obligation flowing from injuries sustained by a third party. Case No. 93-cv-7580, 1995 WL 144783 at *8 (S.D. N.Y. April 3, 1995). The injured third party brought an action under New York's Insurance Law, § 3240, which applies to policies issued or delivered in New York, and allows injured third parties to sue an insurer directly provided that certain conditions are satisfied. *See id.* at *1. The insurer filed a motion to dismiss, arguing that the policy did not cover the plaintiff's injuries as evidenced by a settlement agreement between the insurer and the insured that agreed that the insurer was not obligated to indemnify the injuries at issue. *Id.* at *2; *see also id.* at n.4. The court found that the plaintiff's rights arising under New York's direct-action statute § 3240(a)(2) accrued at the time of the injury, and that "any subsequent settlement or release effectuated" by the insurer and the insured is "not determinative of plaintiff's rights." 1995 WL 144783 at *9. The Court held that whether the injured plaintiff could recover on the policy or whether the policy could

---

[3] The parties do not dispute that New York law applies. *See* ECF Nos. [181] at 4; [182] at 3; [183] at 2. Although Williams argues that she should not be bound by the Settlement or its choice-of-law provision, Williams does not cite to any case law in this Circuit that supports her argument that the Settlement should be set aside.

be void for some other reason would have to be determined at a later stage, and that the insurer and the insured's reasoning for entering into their settlement agreement was not binding on the plaintiff.[4]  *Id.* at *9.

The Court finds *Sales* distinguishable.  In *Sales*, the injured third party sued an insurer under a New York direct action statute not at issue or applicable here. The statute, § 3420(a), applies to insurance policies issued in the state of New York, or that cover a risk located in New York.  *See Preserver Ins. Co. v. Ryba*, 10 N.Y.3d 635, 642 (2008) ("A policy is 'issued for delivery' in New York if it covers both insureds and risks located in this state"); *see also Carlson v. Am. Intern. Group, Inc.*, 30 N.Y.3d 288, 305 (2017) ("[S]ection 3420 applies to policies that cover insureds and risks located in [New York]."). Here, both the insurance policy and injury at issue were issued and occurred in Florida, not New York, and accordingly the statute does not apply.  *See Sales*, 1995 WL 144783 at *2.

Indeed, even if the policy was issued in New York or insured risks located in New York, Great Lakes points to *Miller v. American Steamship Owners Mutual Protection and Indemnity Company* for the proposition that the public policy argument in the context of marine insurance policies is futile.  509 F. Supp. 1047 (S.D.N.Y. 1981); s*ee* ECF No. [181] at 5–7.  In *Miller*, the plaintiff suffered injuries on a vessel, after which the vessel owner and the insurer cancelled the existing maritime

---

[4] Indeed, the case was ultimately decided in favor of the insurer for the notice issue raised in the Court's reasoning. *See Sales v. U.S. Underwriters Ins. Co.*, No. 93 CIV. 7580 (CSH), 1997 WL 13773, at *1 (S.D.N.Y. Jan. 13, 1997).

policy. *Miller*, 509 F. Supp. at 1048. The defendant insurer filed a motion for summary judgment arguing that the policy did not cover anyone but the insured, and that the New York direct action statute does not permit a direct action against the insurer because the insurance contract is one of maritime matters, which fell under a statutory exception under New York law. *Id.* Ultimately, the Southern District of New York was unpersuaded by the plaintiff's argument that New York courts "have adopted a policy of protecting the intended beneficiaries of insurance policies . . . ." *Id.* at 1049. Indeed, the court in *Miller* refused to entertain the argument on the basis that the marine policy at issue was distinct from the kind of policy that the New York direct action statute applied to at such time.[5] Like the Southern District of New York in *Miller*, this Court is not convinced by the public policy argument as applied to Captain Joe's' policy because the direct action statute does not apply to it.[6]

Finally, the Court does not find that *Bodden v. Travelers Prop. Cas. Co. of Am.*, which the R&R relies upon, answers the question at hand. 423 F.Supp.3d 1341 (S.D.

---

[5] The court in *Miller* pointed out that at that time, New York's direct action statute specifically carves out marine insurance policies, like the one at issue here. *Id.* at n.1 (quoting New York Insurance Laws § 167(4), 112(2)(c) and 46(21)).

[6] Captain Joe's and Great Lakes' supplemental briefing also noted that some of the case law recognizing the public policy exception arise in compulsory automobile insurance coverage claims. ECF No. [184] at 3–4; *see also* ECF No. [183] at 12–16. For example, in *Spann v. Commercial Standard Ins. Co. of Dallas, Tex.*, the Eighth Circuit considered the issue of cancellation of an automobile policy following a suit by an injured party under the Arkansas direct action statute. 82 F.2d 593, 594–95 (8th Cir. 1936). Great Lakes and Captain Joe's point out, and this Court agrees, such protections were set forth by the legislative scheme, which is distinct form the maritime insurance policy at issue here.

Fla. 2019). The plaintiffs in *Bodden* were a captain and five crewmembers who became stranded after their boat ran out of fuel and were left adrift for nearly a year. *Id*. at 1343. The plaintiffs filed suit against their employer for damages they suffered as a result of being stranded at sea. The employer was covered under a policy issued by Travelers Property Casualty Company of America ("Travelers"). *Id.* Nearly a year after the plaintiffs filed suit, Travelers filed an action for declaratory relief against the employer seeking to void the policy *ab initio*. The declaratory action resulted in a default judgment against the employer, following which Travelers stopped defending the employer in the plaintiffs' underlying action. *Id*.

The plaintiffs then filed suit against Travelers to collect the final judgment issued in their favor in their suit against their employer. Travelers filed a motion to dismiss arguing, among other things, that the plaintiffs lacked standing to bring an action against the insurer, and that the policy was declared void *ab initio* as a result of the default judgment. *Id*. at 1344. The *Bodden* court denied the motion to dismiss. In so ruling, the Court analyzed whether the parties, or those in privity with them, were identical in both the declaratory action and the action plaintiffs brought against Travelers, and concluded that the prior default judgment against the employer did not preclude the plaintiffs' claims.

As a preliminary matter, the decision in *Bodden* addressed whether, at the motion to dismiss stage, a third party was precluded from suit on *res judicata* grounds, an argument not raised here. The Court's reasoning was limited to whether the claim was sufficiently plead. In addition, *Bodden* made no finding as to whether

15

the third party could set aside a settlement agreement where the parties agreed that the claim was void from inception and where the third party had no standing to assert any claim at the time the settlement was reached.  In short, the Court's analysis in *Bodden* fails to address the question here.

The public policy reasons raised by Williams are not taken lightly by the Court. However, in the absence of any case adopting that position in this kind of case, the Court declines to set aside the Settlement that was reached between Great Lakes and Captain Joe's.  Because the Court here sees no basis to set aside the Settlement, the Policy at issue is void, and summary judgment as to Count I of Great Lake's Amended Complaint must be granted.

As to the remaining issues addressed by the parties' Objections to the Report and Recommendation, the Court has conducted a *de novo* review of the record and the issues presented and **ADOPTS** the remainder of the Report and Recommendation.

## IV.   CONCLUSION

Accordingly, after careful consideration, it is hereby **ORDERED AND ADJUDGED** that the R&R is **REJECTED IN PART and AFFIRMED AND ADOPTED IN PART**.  More specifically:

1. For the reasons stated herein, Summary Judgment as to Count I of Great Lakes' Amended Complaint, ECF No. [33], (the "Amended Complaint") is **GRANTED** in favor of Great Lakes.

2. For the reasons stated in the R&R, Summary Judgment as to Count II and Count III of the Amended Complaint is **GRANTED** in favor of Great Lakes.

3. For the reasons stated in the R&R, Summary Judgment as to Count IV of the Amended Complaint is **GRANTED** in favor of Great Lakes.

4. For the reasons stated in the R&R, Summary Judgment as to Count V of the Amended Complaint is **GRANTED** in favor of Great Lakes.

5. For the reasons stated herein, Williams' Motion for Summary Judgment as to her Counterclaims is **DENIED**.

6. For the reasons stated in the R&R, Captain Joe's Motion for Summary Judgment as to Count IV and Count V of the Amended Complaint, is **DENIED**.

Pursuant to Rule 58(a) of the Federal Rules of Civil Procedure, Final Judgment will be entered by separate order.

The Clerk of Court is directed to **CLOSE** the case, and any pending motions are **DENIED** as moot.

**DONE and ORDERED** in Miami, Florida, this 10th day November, 2025.

_____

**JACQUELINE BECERRA**
**UNITED STATES DISTRICT JUDGE**